Ralston W. STEENROD, Appellant

v.

LOUISVILLE YACHT CLUB ASSOCI-
ATION, INC.; and Commonwealth of
Kentucky, County of Oldham, Reve-
nue Cabinet, Appellees.

Louisville Yacht Club Association,
Inc., Cross–Appellant

v.

Ralston W. Steenrod, Cross–Appellee.

Nos. 2011–CA–001444–MR,
2011–CA–001493–MR.

Court of Appeals of Kentucky.

Nov. 8, 2013.

David L. Vish, Louisville, KY, T. Mor-
gan Ward, Jr., Chadwick A. McTighe,
Louisville, KY, for Appellant/Cross–Appel-
lee.

David Domene, Tyler M. Jolley, Louis-
ville, KY, for Appellee/Cross–Appellant,
Louisville Yacht Club Association, Inc.

Before MAZE, STUMBO, and
TAYLOR, Judges.

## OPINION

TAYLOR, Judge:

Ralston W. Steenrod brings Appeal
No.2011–CA–001444–MR from a June 10,
2010, summary judgment granted by the
Oldham Circuit Court in favor of Louisville
Yacht Club Association, Inc. (Yacht Associ-
ation) for condominium assessments; a
July 11, 2011, order denying a motion to
reconsider; and a July 11, 2011, order
awarding the Yacht Association attorney's
fees in this action. The Yacht Association
brings Cross–Appeal No.2011–CA–001493–
MR from the July 11, 2011, order award-
ing it attorney's fees. We reverse and
remand Appeal No.2011–CA–001444–MR
and dismiss Cross–Appeal No.2011–CA–
001493–MR as moot.

These appeals center upon the legal
question of whether the Louisville Yacht
Club (Yacht Club) was properly organized
and established as a condominium proper-
ty regime by Louisville Yacht Club, LTD,
pursuant to the statutory laws of this
Commonwealth. The Yacht Club consists
of a boat marina and other ancillary prop-
erty located at Pond Creek on the Ohio
River in Oldham County, Kentucky.
Steenrod maintains that the Yacht Club

was not validly organized as a condominium property regime and, thus, the Yacht Association has no authority to assess any type of fees;[1] conversely, the Yacht Association argues that the Yacht Club was a validly organized condominium property regime under Kentucky law at the time it was created in 1984. The circuit court rendered summary judgment concluding that as a matter of law the Yacht Club was a valid condominium property regime and the Yacht Association's assessments were properly levied under the Master Deed.

Summary judgment may be granted in Kentucky where there exists no material issue of fact and movant is entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure 56; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). For the following reasons, we conclude that the circuit court erred by rendering summary judgment in favor of the Yacht Association.

In 1984, a "Master Deed, Declaration of Condominium, Horizontal Property Regime of Louisville Yacht Club" (Master Deed) was executed and filed of record by its developer, Louisville Yacht Club, LTD. The Master Deed set forth its specific purpose as follows:

> 1. Purpose. The purpose of this Master Deed for a Condominium Property Regime established under the Condominium Property Laws, Section 381.805 through 381.910, of the Kentucky Revised Statutes ("KRS"). This is a Condominium Property Regime for boat slips and certain other uses as set forth herein, and shall constitute covenants running with the land and are binding on and for the benefit of present and future owners, lessees, and mortgages of any part of the Regime.

Pursuant to the Master Deed, 158 individual "Boat Slip Units" were created as part of the marina, and these Boat Slip Units were defined as "a part of the condominium property which is subject to private ownership."[2] Concomitantly, the Master Deed defined a "Boat Slip Unit Owner" as "the fee simple owner of a Boat Slip Unit." Also, the Master Deed provided that each Boat Slip Unit Owner possessed an undivided share in common elements, including swimming pool, dock, and clubhouse. The Yacht Association was specifically created as the governing body of the Yacht Club in the Master Deed and consisted of all boat slip owners. It is clear that the Master Deed attempted to create a condominium property regime consisting of common property and individually owned Boat Slip Units that comprised the marina.

In this Commonwealth, the creation and establishment of a condominium property regime is governed by Kentucky Revised Statutes (KRS) 381.805 to KRS 381.910 and is specifically referred to as the Horizontal Property Law.[3] KRS 381.815. To

---

1. A dispute between the parties arose when the Louisville Yacht Club Association, Inc., started imposing special assessments upon owners of boat slips at the marina, including Ralston W. Steenrod. The special assessments were fees resulting from dredging operations to remove sediment, silt, and other material from the riverbed in Pond Creek on the Ohio River where the marina is located.

2. The Master Deed, Declaration of Condominium, Horizontal Property Regime of Louisville Yacht Club also created three residential real property units; however, we offer no opinion as to these residential units as they are not at issue in these appeals.

3. Although not relevant herein, the Kentucky legislature adopted the Kentucky Condominium Act (Kentucky Revised Statutes (KRS) 381.9101—KRS 381.9207) effective January 1, 2011, as a supplement to the Horizontal Property Law (KRS 381.805 to KRS 381.910).

be valid, a proposed condominium property regime must comply with the myriad statutory mandates as set forth in the Horizontal Property Law. Specifically, every condominium property regime must consist of two types of real property—property owned in common by all owners (defined as common elements) and property owned exclusively by one owner (defined as a Unit). A purchaser of a condominium unit receives fee simple title to such unit and receives an undivided interest in the common elements. Thus, to constitute a valid condominium property regime, the regime must provide for the establishment and sale of condominium units.

KRS 381.810(1) defines such a "Unit" as:

"Unit" means an enclosed space as measured from interior unfinished surfaces consisting of one or more rooms occupying all or part of a floor in a building of one or more floors or stories regardless of whether it be designed for residence, for office, for the operation of any industry or business, for any other type of independent use or any combination of the above uses, provided it has a direct exit to a thoroughfare or to a given common space leading to a thoroughfare[.]

Under the terms of KRS 381.810(1), a unit is "an enclosed space" that "consist[s] of one or more rooms." We view the definition of unit in KRS 381.810(1) as plain and unambiguous.

In this case, the Unit is described in the Master Deed of the Yacht Club as "Boat Slips Unit," and the owner of a Boat Slip Unit purportedly received fee simple title to the Boat Slip Unit. As noted, the boat slips are part of a marina that is located on the water and are contiguous to the docks and piers of the marina. We can find of

record no legal description for the property that was conveyed by the developer for the property regime from which the Boat Slip Units were created. Presumably, it is part of the riparian rights to the Ohio River transferred by permit or lease from the Department of the Army Corps of Engineers to the developer.

At the time of creation of the Yacht Club in 1984, there was no legal authority in Kentucky that would construe a boat slip in a marina to constitute a unit under the Horizontal Property Law. Accordingly, based upon the plain language of KRS 381.810(1), we conclude that a boat slip cannot constitute a "unit" under the statute. Simply put, a boat slip does not qualify as "an enclosed space" nor does it consist of a room or rooms as plainly required under the definition of unit as found in KRS 381.810(1). The Boat Slip Units are located entirely upon navigable waters and cannot be viewed as a unit under the unambiguous language of KRS 381.810(1). We are buttressed in our conclusion by the following commentary:

The definition of "unit" in the Horizontal Property Law as an "enclosed space" poses serious obstacles to modern condominium practice in Kentucky. Boat slips, parking spaces, and roof tops are not enclosed spaces, and may not presently be developed as condominium units under the Horizontal Property Law....

2 R. Douglas Martin & Gregory A. Compton, *Kentucky Real Estate Law and Practice* § 27.9 (3rd ed.2007). Hence, we hold that a Boat Slip Unit does not qualify as a condominium unit under KRS 381.810(1).

We are cognizant that the Kentucky Legislature passed the Kentucky Condominium Act (KRS 381.9101—KRS

381.9207) effective January 1, 2011, as a supplement to the Horizontal Property Law (KRS 381.805—KRS 381.910). Under this statute, boat slips could be construed as a condominium unit.[4] The Kentucky Condominium Act, KRS 381.9103, specifically states that the Act shall apply retroactively to condominiums created before its effective date "only to the extent of events or circumstances occurring after January 1, 2011." In the case at hand, the events and circumstances leading to the filing of the instant action clearly occurred prior to January 1, 2011; thus, the newly enacted Kentucky Condominium Act is inapplicable herein.

We view any remaining contentions in Appeal No.2011–CA–001444–MR and Cross–Appeal No.2011–CA–001493–MR as moot.

In sum, we hold that the Boat Slips Units are not units within the meaning of KRS 381.810(1) and cannot be considered as part of a condominium property regime under KRS 381.805—KRS 381.910 (Horizontal Property Law). Consequently, the circuit court erred by rendering summary judgment so holding. We do not address whether Steenrod is liable to the Yacht Association under any other applicable law or theories of recovery as this was not addressed by the circuit court.

For the foregoing reasons, Appeal No.2011–CA–001444–MR is reversed and this case is remand for proceedings consistent with this opinion and Cross–Appeal No.2011–CA–001493–MR is dismissed as moot.

STUMBO, Judge, Concurs.

MAZE, Judge, Concurring with Separate Opinion.

MAZE, Judge, Concurs.

I fully join in the reasoning and result of the majority opinion, but I do so recognizing that the potential effects of this decision will likely produce chaos for the entire membership of the Louisville Yacht Club Association and possibly other similar organizations. As the majority correctly explains, a boat slip does not meet the definition of a "unit" under the pre–2011 version of KRS 381.810(1). Consequently, the Yacht Club is not a valid condominium property regime under the Horizontal Property Law and does not have the authority to assess or collect fees from its members under the statute. Yet while the law is clear on this point, the result leaves the status of the Yacht Club and similarly situated clubs in a great deal of uncertainty.

And unfortunately, we cannot give any guidance to the trial court about how this matter should proceed on remand. Those issues have not been raised on appeal and the parties have only touched upon the implications of this ruling. Even though the Yacht Club does not have authority to make the assessments, Steenrod has clearly received significant value for the services provided. The trial court will have to determine the common law or equitable remedies which may be available to it. The Yacht Club may also have to be reorganized under the new Kentucky Condominium Act if that is possible.

Given the uncertainties in the law, I do not know if any of this or any other reme-

---

4. It is unclear whether riparian rights may be severed from the uplands. Under our common law, riparian rights are considered appurtenant to the uplands and cannot be separately alienated therefrom. However, we express no opinion as to the effect of the Kentucky Condominium Act upon alienation of riparian rights. Additionally, we do not address any jurisdictional issues that may arise under Section 10 of the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. § 403 (2013).

dy is even possible. Steenrod insists that he does not want to destroy the Yacht Club, but that could be the end result of our decision here. I can only hope that the parties will realize their common interests in avoiding that result and work together to reach the best solution.